Peter NIKWEI, Taiwo Abeson, Kevin Vorgman, Omotayo Oluwadaisi, Chucwudike Chyke Wogu, Akeem Adio, Franson Uche, Victor A. Enni and Frederick Herbert Glinton, Plaintiffs-Appellees,

v.

ROSS SCHOOL OF AVIATION, INC., an Oklahoma corporation, Defendant,

Rudolph G. Babcock, Defendant-Appellant.

No. 85–2130.

United States Court of Appeals, Tenth Circuit.

June 24, 1987.

Richard D. Amatucci, Tulsa, Okla., for plaintiffs-appellees.

Stanley D. Monroe, Tulsa, Okla., for defendant-appellant.

Before BARRETT and MOORE, Circuit Judges, and CHILSON, District Judge.[*]

CHILSON, District Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See FED.R. APP.P. 34(a); 10th Cir.R. 34.1.8(c) and 27.-1.2. The cause is thereby ordered submitted without oral argument.

## FACTUAL BACKGROUND

The plaintiffs are all citizens of Nigeria, excepting one resident of the West Indies. Defendant Babcock travelled to Nigeria to solicit students for his flight school in Tulsa, Oklahoma. Resultingly, during the latter part of 1983, the plaintiffs arrived in America fully expecting to receive flight training from the defendants who operated their aviation school in Tulsa.

Prior to their arrival, the plaintiffs arranged for personal deposits to be sent to Mr. Babcock. Defendant Babcock was the owner and president of co-defendant, Ross School of Aviation, Inc. These deposits were to serve as prepayments of the plaintiffs' tuition and living expenses. At the direction and discretion of the plaintiffs, Babcock was to disburse these funds. Ross Aviation closed in December of 1983, predating the plaintiffs' arrival in Tulsa.

Plaintiffs contend the defendants owed them a fiduciary duty which was breached when the defendants commingled the funds for the defendants' use and benefit without the plaintiffs' authorization. Furthermore, after repeated demands, Babcock refused to refund the monies owed to these foreign nationals. Consequently, the plaintiffs were foreclosed from receiving their flight instruction, nothwithstanding the fact they had prepaid for such in full.

## PROCEDURAL BACKGROUND

On February 22, 1984, plaintiffs filed this diversity action in United States District Court for the Northern District of Oklahoma. Plaintiffs alleged fraud and conversion in seeking compensatory and punitive damages. Plaintiffs served the defendant corporation by service upon the Oklahoma Secretary of State. This service is not in dispute. Plaintiffs attempted to effectuate service upon Babcock on several occasions between the February 22, 1984, filing of the Complaint, and the September 14, 1984, Motion and Request to Enter Default Judgment.

Plaintiffs aver that Babcock was duly and timely served by certified mail, return receipt requested, on March 1, 1984, at his rented residence in Broken Arrow, Oklahoma, since either he or his wife refused to accept the service. The return receipt was marked "refused." Because Babcock failed to answer or otherwise defend as to the Complaint, plaintiffs filed a Motion and Request to Enter Default Judgment on September 14, 1984. After two hearings, the plaintiffs' Motion for Default Judgment was granted, both as to compensatory and punitive damages. These judgment dates were respectively, October 17, and November 5, of 1984.

On February 26, 1985, Babcock only, filed a Motion to Set Aside the Default and Default Judgment upon the ground that he had not been served with process, and thus, the trial court lacked in personam jurisdiction pursuant to FED.R.CIV.P. 60(b)(4). Babcock's personal affidavit stated he was not in Oklahoma around the time of March

---

[*] The Honorable Hatfield Chilson, Senior United States District Judge for the District of Colorado, sitting by designation.

1, 1984, when service was purportedly perfected. There were three evidentiary hearings held in May and June of 1985, all of which dealt exclusively with whether service had been perfected upon Babcock. Babcock was represented by counsel at all three hearings. On June 25, 1985, the learned trial judge denied Babcock's Motion to Set Aside the Default Judgment, and concluded that service of process had been accomplished so as to apprise Babcock of the pending lawsuit. Babcock only, filed his timely Notice of Appeal on July 22, 1985.

## DISCUSSION

This Court must ascertain whether the trial court abused its discretion in entering and failing to set aside the default judgment. We are mindful of the appropriate standards of review to be employed in determining whether to set aside an entry of default and default judgment. The defaulting party has the burden of proving that the default and default judgment should be set aside. *Barta v. Long*, 670 F.2d 907, 909 (10th Cir.1982); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *Atchison, Topeka and Santa Fe v. Match-maker, Inc.*, 107 F.R.D. 63, 65 (D.Colo.1985); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2692 at 469 (2d ed. 1983); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.25[2] at 60–225 (1985). Setting aside a default entry or default judgment is addressed to the sound discretion of the trial court[1], and they are given "a great deal of latitude" in exercising their discretion as to whether the movant carried his burden of proving that the default and default judgment were entered erroneously.[2] Accordingly, considerable deference is given the trial judge's determination regarding the default judgment since he is the person most familiar with the circumstances of the case and, thus, is in the best position to evaluate the good faith and credibility of the parties at the hearings. 10 C. Wright, *supra*, § 2693 at 472–75. Finally, the trial court's decision will not be disturbed on appeal, unless

such is judged to be "clearly wrong." *Barta*, 670 F.2d at 910; 10 C. Wright, *supra*. § 2693 at 474.

In the appellant's brief, he presents a two-pronged argument as to why the trial court erred in failing to set aside the default judgment. First, Babcock alleges that he neither refused service, nor was ever served, and therefore, had no knowledge of the pending action against him. In the alternative, Babcock contends that even if he did refuse service, the service is defective since it was not done in strict accordance with OKLA.STAT.ANN. tit. 12, §§ 153, 158, 159, 168 (1981) and FED.R. CIV.P. 4. We will address the arguments in that order.

## I. DID THE TRIAL COURT ERR IN HOLDING THAT BABCOCK HAD REFUSED SERVICE OF PROCESS?

A proper mailing of the summons and complaint raises a rebuttable presumption of due delivery to the addressee. *French v. Banco Nacional De Cuba*, 192 F.Supp. 579, 581 (S.D.N.Y.1961). Accordingly, the burden to present "strong and convincing proof" of insufficiency of service rests upon the defendant. *Wilson v. Upton*, 373 P.2d 229, 231 (Okla.1962); *see Rosen v. Solom*, 374 F.Supp. 915, 921 (E.D. Pa.1974), *aff'd* 523 F.2d 1051 (3d Cir.1975). After an exhaustive review of the record, it is clear that Babcock did not sustain this burden, as the record is replete with evidence indicating that Babcock or his wife did indeed refuse service on March 1, 1984.

The primary purpose of the evidentiary hearings was to ascertain whether Babcock had service perfected upon him. It was Babcock's contention that he was out of town and in the process of moving his family to Wisconsin on March 1, 1984, the date of the purported service in Broken Arrow. Babcock offered no evidence at any of the hearings. Babcock's entire case rests solely upon his submission of two affidavits to the court. One affidavit was sworn to by a friend of Babcock's, Michael Seidl. Its content is of little value since it

---

1. *Barta*, 620 F.2d at 909; *Gomes*, 420 F.2d at 1367.

2. 10 C. Wright, *supra*, § 2697 at 529 (*quoting Trueblood v. Grayson Shops of Tennessee, Inc.*, 32 F.R.D. 190, 196 (E.D.Va.1963)).

only states that Babcock was with Seidl in Portland, Oregon, March 18–22, 1984. These dates are neither in dispute, nor of any relevance, because the contradicted service transpired on March 1, 1984.

Babcock did not submit any third party affidavits that attested to his whereabouts being anywhere other than Broken Arrow, Oklahoma, on March 1, 1984. Babcock's personal affidavits was conclusory and merely stated he was in Wisconsin at the time of the alleged service on March 1, 1984, and, hence, he had no notice of the proceeding against him. It has been held that where the service by mail was returned marked "refused", and where the only evidence to substantiate the defendant's whereabouts is their personal affidavit, such is insufficient to invalidate the service. *Patel v. Southern Brokers, Ltd.*, 277 S.C. 490, 289 S.E.2d 642, 644 (1982); *Cortez Dev. v. New York Capital Group, Inc.*, 401 So.2d 1163, 1165 (Fla.App.1981). Furthermore, service at the defendant's usual place of abode by leaving the document with the defendant's wife is a prima facie case of proper service and cannot be contradicted or impeached by the uncorroborated testimony of the defendant. *Wilson*, 373 P.2d at 231; *see also Anderson v. Ticknor*, 571 P.2d 1245, 1247 (Okla.App. 1977).

In the instant litigation, the trial court, as the finder of fact, rejected Babcock's exculpatory affidavit. This Court believes the trial judge's decision is well founded upon the evidence that was before him. In fact, there was no independent evidence in the record that would indicate Babcock or his wife were anywhere other than at their Broken Arrow residence on March 1, 1984. To the contrary, there was clearly ample evidence that allowed the trial court to adduce that (1) Babcock or his wife refused service, and (2) Babcock was simply endeavoring to avoid service of process.

During the course of the hearings, plaintiffs tendered several witnesses who substantiated the premise that proper service was effectuated upon Babcock. A brief recapitulation of the pertinent testimony elicited at the trial level will support the trial court's findings and conclusions. Illustratively, consider the testimony of the personal representative of the deceased landlord in whose home the Babcocks were residing while in Broken Arrow. On several occasions, during the months of March and April of 1984, he, personally, had spoken over the telephone with Babcock while Babcock was at the house and address in question. *Record*, Vol. VI at 6–7. The personal representative said the Babcocks moved from Broken Arrow "[t]owards the end of April, 1984." *Record*, Vol. VI at 5. Moreover, the attorney for the personal representative found a note from Babcock around the 1st of May, 1984. This note stated that Babcock and his family were leaving for Wisconsin and would forfeit the security deposit as the last month's rent. *Record*, Vol. V at 9–10. Also, postal service records proved that Babcock did not change his address from Broken Arrow to Rhinelander, Wisconsin until May 21, 1984. This aforementioned corroborated testimony plainly contradicted Babcock's statement that he moved to Wisconsin around March 1, 1984.

Most importantly, Rupert Norton, the mail carrier who was responsible for delivery of Babcock's mail, said "there were many" certified or registered items that he delivered to Babcock's residence "on or about March 1 and into April." *Record*, Vol. VI at 14–15. Further, Norton stated he would stop at least "three times a week with accountable mail" during the months of March and April, 1984. *Record*, Vol. VI at 15. He stated at the hearing that during March and April, 1984, a "number" of registered or certified pieces of mail were refused by either Babcock or his wife. *Record*, Vol. VI at 17–18. As to who refused the March 1, 1984, summons and complaint, Norton said children cannot refuse certified mail. Consequently, either "[Babcock] or his wife one [sic] would have to refuse it." *Record*, Vol. VI at 17. During cross-examination, Norton testified he knew both Rudolph Babcock and his wife by sight. The postman also stated it was not an adult visitor of the Babcock's who refused the service of process. *Record*, Vol. VI at 20. Norton does not remember ever presenting anyone other than Mr. or Mrs. Babcock items of certified mail. *Record*, Vol. VI at 21.

Therefore, it appears Babcock, personally, was given notice of the proceeding by certified mail. Nothwithstanding that fact, there was additional evidence presented that would have put Babcock on notice of the pending action, thereby making him inclined to refuse personal service of process. For instance, Babcock's corporation (co-defendant Ross Aviation), in which he was the principal owner and president, was also given notice by certified mail on numerous occasions, none of which were returned to sender. Moreover, the personal representative of the landlord stated that he had had conversations with Babcock about "the news of his company's problems" and the fact Babcock thought "he will be vindicated after a trial...." *Record,* Vol. VI at 7. Thus, it is evident that Babcock had knowledge of prospective actions against him. Given these circumstances, it is likely that one who refuses a certified letter that has a law office for a return address, probably knew what it contained, and was aware that it was connected with a previous act which may result in a legal proceeding.

Concludingly, given the above testimony at the trial level, this Court finds the trial judge did not err in holding "that the certified letter which was marked 'refused' was in fact refused by Rudolph G. Babcock or his wife." *Record,* Vol. I at 55; *Record,* Vol. VI at 23. Babcock failed to sustain his burden to produce "strong and convincing" evidence of insufficiency of process.

II. WAS THE MARCH 1, 1984, SERVICE OF PROCESS UPON DEFENDANT BABCOCK FATALLY DEFECTIVE SINCE IT WAS NOT DONE IN STRICT ADHERENCE TO FED.R. CIV.P. 4 AND OKLA.STAT.ANN. tit. 12, §§ 153, 158, 159, 168 (1981)?

FED.R.CIV.P. 4(c)(2)(C) provides the summons and complaint may be served upon the defendant pursuant to the law of the state in which the presiding district court is located. In Oklahoma, service by mail is governed by OKLA.STAT.ANN. tit. 12, § 151 (1981), which provides that the summons, addressed to the defendant, is to be "deposited in the United States mail with postage prepaid for forwarding by certified mail with a request for a return receipt from *addressee only.*" (emphasis added). Defendant avers that since plaintiffs did not request a return receipt from addressee only, the statute has not been strictly complied with and service was fatally defective; thus, the trial court never obtained personal jurisdiction over Babcock. In other words, defendant claims that even if he "or a member of his family did in fact 'refuse' the Certified Mail, Plaintiffs still failed to comply with Rule 4, hence, service was not perfected." *Record,* Vol. I at 40.

We agree with the trial court and hold, that given the evidence, Babcock's contention is without merit. Though Oklahoma courts have held that strict compliance with the notice statutes is necessary to perfect service, those cases are distinguishable in that they dealt with service by publication[3], or where personal service was upon the mother of the defendant with whom the defendant did not reside[4], or where the return receipt marked "unclaimed", was lost, and never filed with the court[5], or where service was attempted only once and the addressee was not present when service was undertaken.[6]

In the instant action, the complaint and summons were delivered to Babcock's residence by certified mail, as opposed to the shotgun approach of notice by publication. Furthermore, service was accomplished at Babcock's residence, and the evidence demonstrated that the defendant

---

3. *Letteer v. Conservancy Dist. No. 30,* 385 P.2d 796, 801 (Okla.1963); *Davis v. Rowland,* 206 Okla. 257, 242 P.2d 716 (1952); *Walters v. Weaver,* 204 Okla. 72, 226 P.2d 931, 934 (1950).

4. *Ferguson v. Hilborn,* 402 P.2d 914, 920 (Okla. 1965).

5. *Hicks v. Hamilton,* 283 P.2d 1115, 1117 (Okla. 1955).

6. *Snyder v. Southwestern Bell Tel. Co.,* 548 P.2d 218, 220 (Okla.1976).

himself was served, or, at the very least, it was his wife with whom he lived, who refused the service. Also, in contrast to *Hicks,* the return receipt marked "refused" was not lost; instead, it was an exhibit read into evidence at the hearing. Moreover, this Court notes that though *Hicks* required "strict" compliance with the notice statute, *Hicks* was expressly overruled in that regard by *Williams v. Egan* [7], and its progeny [8], which mandated only "substantial" compliance therewith. Finally, and most importantly, in none of the above cited cases where service was invalidated was the defendant ever accused of attempting to avoid process. Illustratively, in nullifying the service in *Snyder,* the court explicitly distinguished its facts and result from cases where service was refused. *Snyder,* 548 P.2d at 220. Accordingly, the defendant's reliance on *Snyder* is clearly misplaced and inapposite.

It has long been settled that "statutory provisions shall be liberally construed to promote their object." *Amoskeag Sav. Bank v. Eppler,* 182 Okla. 391, 77 P.2d 1158, 1161 (1938) (citing OKLA.STAT. ANN. titl. 12, § 2); *Republic Bank & Trust Co. of Tulsa v. Bohmar Minerals, Inc.,* 661 P.2d 521, 525 n. 19 (Okla.1983); *Williams,* 308 P.2d at 278. In Oklahoma, the object of the state notice statutes is to provide a method of notification which "is reasonably calculated to give [the defendant] knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard. No rigid formula exists as to the kind of notice that must be sent; the notice required will necessarily vary with the circumstances and conditions...." *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713, 718 (Okla.1968) (*citing Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

It is well settled, that as to notice, due process does not require exact certainty.

*Wuchter v. Pizzutti,* 276 U.S. 13, 24, 48 S.Ct. 259, 72 L.Ed. 446 (1928). The United States Supreme Court has held in both *Shoe* [9] and *McGee* [10] that the sending by mail of a certified copy of a summons and complaint is reasonably calculated to apprise the defendant of a pending action, thereby satisfying the requirements of due process. The mere fact that the defendant did not actually scrutinize and read the summons and complaint is not violative of the standards of fair play and substantial justice required by due process.

As aforementioned, Babcock argues irrespective of whether he refused service, the service is defective since it did not strictly comply with the Oklahoma notice statutes. Given the foregoing authority requiring substantial, as opposed to strict compliance with the notice statutes, and Babcock's egregious conduct in attempting to avoid service, this Court holds the notice statutes were sufficiently complied with.

It is accepted that "mere irregularities in the form of process does not render it void where such defective process 'is sufficient to advise the defendant of the nature of the case, the court in which it is filed, and his interest therein.'" *Young v. Seaway Pipeline, Inc.,* 576 P.2d 1144, 1147 (Okla. 1977) (*quoting Texas Title Guaranty Co. v. Mardis,* 186 Okla. 433, 98 P.2d 593, 594–95 (1939)); *Missouri-Kansas-Texas R.R. Co. v. Smithart,* 475 P.2d 823, 825 (Okla. 1970). The plaintiffs' notice efforts in the case at bar satisfied these requirements, and Babcock was imparted with adequate actual notice.

Further, there is "a general trend of authority toward sustaining the validity of service of process, if the statutory provisions in themselves indicate that there is a reasonable probability that if the statutes are complied with, the defendant will receive actual notice...." *Wuchter,* 276 U.S. at 24, 48 S.Ct. at 262. In fact, where delivery by mail has been "refused" by the

---

7. 308 P.2d 273 (Okla.1957), at 276–78.

8. *See also Jackson v. Welch,* 545 P.2d 1254, 1256 (Okla.1976); *Dial v. Ivey,* 370 F.Supp. 833, 836 (E.D.Okla.1974).

9. *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

10. *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 233 (1957).

addressee, and the letter is returned to the sender with that notation, "[t]he almost unanimous line of authority indicates that due process has been satisfied and that the court has acquired personal jurisdiction over the defendant." Note, *Constitutional Law: The Validity of Service of Process by Mail When There is No Return Receipt: The Outer Limits of Due Process,* 25 Okla.L.Rev. 566, 567 (1972).

Illustratively, in the seminal case of *Cherry v. Heffernan,* 132 Fla. 386, 182 So. 427, 429 (1938), the Florida Supreme Court pronounced that "[i]f defendant chooses to flout the notice and refuse to accept it, he will not be permitted to say in the next breath that he has not been served." Furthermore, "[i]t would create an intolerable situation if the defendant could, by his own wilful act, or refusal to act, prevent the plaintiff from maintaining his action." *Creadick v. Keller,* 35 Del. 169, 160 A. 909, 909 (1932). Thus, courts view service by registered or certified mail as being complete when such is refused though the act of the defendant. *Massengill v. Campbell,* 391 F.2d 233, 235 (5th Cir.1968); *Fields v. Turlington,* 481 So.2d 960, 962 (Fla.App. 1986); *Decca Leasing Corp. v. Torres,* 465 So.2d 910, 914 (La.App.1985), *cert. denied,* 468 So.2d 1211 (1985); *State of California Dept. of Forestry v. Terry,* 124 Cal.App.3d 140, 177 Cal.Rptr. 92, 95 (1981); *Hankla v. Roseland School Dist.,* 46 Cal.App.3d 644, 120 Cal.Rptr. 827, 834 (1975); *Patel,* 289 S.E.2d at 644; *McIntee v. State Dept. of Pub. Safety,* 279 N.W.2d 817, 820 (Minn. 1979); *Merriott v. Whitsell,* 251 Ark. 1031, 476 S.W.2d 230, 232 (1972); *Thomas Organ Co. v. Universal Music Co.,* 261 So.2d 323, 327 (La.App.1972); *Schaaf v. Brown,* 304 Ky. 466, 200 S.W.2d 909, 910 (1947); *Boss v. Irvine,* 28 F.Supp. 983, 985 (W.D.Wash. 1939).

Consonant with the aforementioned accepted principles, if, as in the instant litigation, it was shown the defendant refused either to sign the receipt or open the letter, service would still be effectuated if there were proof that the papers were actually sent to and received by the defendant. *Yox. v. Durgan,* 302 F.Supp. 1262, 1263 (E.D.Tenn.1969); *Harper v. Catherton,* 255

A.2d 492, 493 (D.C.App.1969). In such a situation, the defendant will neither be heard to complain that he has not received notice nor that the notice statutes have not been strictly complied with. *Schaaf,* 200 S.W.2d at 910.

A case factually analogous to the case at bar is *Wax v. Van Marter,* 124 Pa.Super. 573, 189 A. 537 (1936). The defendant in *Wax* was found to have refused service. As in *Nikwei,* the defendant claimed that the service may have been refused by a third person. In contrast to *Nikwei,* there was nothing in the record that showed the circumstances under which service was had. Nevertheless, the reviewing court sustained the service and concluded it was plausible the defendant's scheme was to evade service by refusing to accept it.

> Such willful, artificial conduct ... ought not to be rewarded with success. Fortunately, a good service does not depend on whether the signature of the defendant is on the return receipt, but rather on the reasonable probability that the notice reached him. Statutes are to be construed so as may best effectuate the intentions of the makers.

*Wax,* 189 A. at 539.

In *Nikwei,* the record is replete with evidence that service was successful either as against Babcock or his wife. A defendant should not be permitted to evade the notice statute on highly technical grounds by his acts of avoidance. *Schaaf,* 200 S.W.2d at 910; *State v. Dist. Court of Second Judicial Dist.,* 107 Mont. 489, 86 P.2d 750, 753 (1939).

■ Though there is sufficient proof for the trial court to have concluded that Babcock was served, the record is also peppered with evidence that Babcock was endeavoring to avoid service by concealing his whereabouts. Where a defendant attempts to hide, thereby making service by mail nearly impossible, service is perfected and the court has jurisdiction. *Leviten v. Gaunt,* 360 So.2d 112, 113 (Fla.Dist.Ct. 1978); *Robb v. Picarelli,* 319 So.2d 645, 646 (Fla.App.1975); *Fernandez v. Chamber-*

*lain,* 201 So.2d 781, 785–86 (Fla.App.1967), *cert. denied,* 207 So.2d 454 (Fla.1967).

Therefore, the evidence presented could clearly justify the trial court's conclusion that Babcock was served with substantial, though not absolute, compliance with the Oklahoma notice statute then in effect. The aforecited case law is patently clear that a defendant cannot refuse or avoid service on a technical ground, and then exclaim he has not been correctly served.

### CONCLUSION

■ This Court is of the opinion that the facts established that the defendant had both reasonable notice of the action instituted against him and an opportunity to defend against it. Moreover, the trial court was correct in awarding compensatory and punitive damages. There were facts to sustain the trial court's finding that the defendant's conduct in travelling to Nigeria to solicit funds and students for Ross Aviation, and then refusing to disburse the plaintiffs' prepaid funds to be "oppressive, malicious, fraudulent, and wanton." This Court is in complete agreement with the district court, in that "the formalities of the legal system are available to protect the interest of all parties and may not be used to avoid obligations for a period of time sufficient to insure Plaintiffs will be unavailable to pursue their legal rights." Record, Vol. I at 55. The trial court was correct in holding that sometime courts must look beyond the technical requirements of the law and address the issue whether process has been effectuated and notice given to the defendant.

This Court, and the majority of other courts, have consistently overruled such technical objections to service of process where the defendant has not been denied due process. If there has been any denial of due process, which this Court doubts, it has been the result of a self-inflicted wound.

The denial of appellant's motion to set aside the default comes to this Court with a presumption of correctness, which appellant has not dispelled. Accordingly, the trial judge's decision was not "clearly wrong", and such is hereby AFFIRMED.